UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


HOWARD STANLEY, ET AL.                    CIVIL ACTION


VERSUS                                    NO: 06-1979


WYETH INC., ET AL.                        SECTION: "J" (4)


## ORDER AND REASONS

The question of federal subject matter jurisdiction is before the Court. The Court has raised the issue of jurisdiction *sua sponte*. (Doc. 21.) Plaintiffs have filed a memorandum arguing against federal jurisdiction. (Doc. 22). All defendants have filed memoranda in support of the existence of federal jurisdiction. (Docs. 23, 24, 25.) For the reasons given below, the Court finds that subject matter jurisdiction is lacking and that this case should be REMANDED.

## BACKGROUND

According to the complaint, Stephanie Ann Arculeer Stanley (referred to as Arculeer) was prescribed Cordarone for a non-life

threatening heart condition. Cordarone is Wyeth's[1] brand name for the drug that it developed that is generically called amiodarone. Defendant pharmacist, Elizabeth Hughes Smith, filled the prescription with generic amiodarone manufactured by defendant Sandoz. Plaintiffs allege that Smith failed to include a "Patient Insert" of warnings that was required to accompany the drug under The Food and Drug Administration ("FDA") regulations. Arculeer took the drug as prescribed, developed severe liver complications allegedly as side effects from the drug, underwent two liver transplants, and ultimately died. Her husband and children sue for wrongful death and as a survival action.

Plaintiffs allege that Wyeth and Sandoz knew that amiodarone was dangerous and should only be used as a last resort to treat life-threatening conditions. Plaintiffs allege that despite this knowledge agents for Wyeth and Sandoz misled Arculeer's doctor by promoting the drug for unauthorized off-label uses. Plaintiffs allege that Wyeth's and Sandoz's misrepresentations were a proximate cause of Arculeer's illness and death. Plaintiffs also allege that Ms. Smith's failure to include the "Patient Insert" was a proximate cause of Arculeer's illness and death.

---

[1] The Court will use "Wyeth" to refer collectively to the parties Wyeth, Inc. a/k/a Wyeth Company, and to Wyeth Pharmaceuticals, Inc.

Shortly after removal, Wyeth filed a Motion to Dismiss. (Doc. 8.) After the hearing on Wyeth's motion, the Court ordered the parties to file memoranda on the existence of jurisdiction.

## DISCUSSION

Although no party has challenged the jurisdiction of this Court, when there is a question regarding subject matter jurisdiction the Court should review its own jurisdiction *sua sponte*. *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1447(c). Sandoz, the manufacturer, removed the case from state court asserting alternative jurisdictional grounds. Sandoz asserted that this case falls under the "federal officer" removal provision of 28 U.S.C. § 1442(a)(1) because the claims against Sandoz in this context are really an attack on the FDA's decisions about the content of the label or the safety of the drug. Sandoz argues that it was required by law to give exactly the warning authorized by the FDA for the exact composition of amiodarone. Sandoz alternatively based removal on diversity because it claims that the local pharmacist is not a true party to this action and so is fraudulently joined.

### *Federal Officer*

Case law is clear that being a participant in a regulated industry is insufficient reason for a defendant to remove based

on federal officer jurisdiction. *See Jamison v. Purdue Pharma Co.*, 251 F.Supp. 2d 1315, 1326 (S. D. Miss. 2003). Cases cited by Sandoz where private defendants were held to meet the § 1442(a)(1) standard of occupying "essentially the position of employees of the government" were those in which the government contracted with a private company for a service or product and then exercised control over the defendant's performance.[2] Here the FDA has not contracted with Sandoz for the production of amiodarone. Although Sandoz may have complied with FDA regulations when it made the drug, the FDA never asked Sandoz to make or sell the drug. This situation is distinguishable and has been consistently distinguished, "[l]est participants in every regulated industry be entitled to 'federal officer' status." *Little v. Purdue Pharma, L.P.*, F.Supp. 2d 838, 861 (S.D. Ohio 2002). *Jamison*, *supra*, is well-reasoned and addresses nearly identical arguments regarding federal officer status. The Court is persuaded by *Jamison's* reasoning and holds similarly that Sandoz does not qualify as a "federal officer" under 28 U.S.C. §

---

[2] *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998)(chemical manufacturer making Agent Orange for the Department of Defense); *Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705 (E.D. Tex. 1998)(operator of government-owned and controlled butadiene plant); *Gulati v. Zuckerman*, 723 F. Supp. 353 (E.D. Pa. 1989)(contractor working for the Department of Defense).

1442(a)(1).

### *Federal Question*

The existence of a federal question as a possible basis for jurisdiction under 28 U.S.C. § 1331 was not asserted in the notice of removal. No motion to amend the notice has been filed. Even if the Court were to consider Sandoz's briefing of the issue as a motion to amend the notice of removal, following the thirty day period for removal allowed by 28 U.S.C. § 1446(b) a defendant may only amend a notice to cure technical defects and not to state an entirely different jurisdictional basis. *See Energy Catering Services, Inc. v. Burrow*, 911 F.Supp. 221, 223 (E.D.La. 1995). Thus, federal question jurisdiction has not been properly raised and cannot now be asserted to prevent remand. In addition, Sandoz has failed to identify a federal right that is an essential element of plaintiffs' claims. In fact, Sandoz argues that no private right of action exists under federal law for the allegations plaintiffs make. Plaintiffs claims sound in state law of products liability and tort. The existence of a federal right is necessary to establish federal question jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 918 (5th Cir. 2001).

### *Diversity*

Diversity jurisdiction under 28 U.S.C. § 1332 exists where

5

the matter in controversy exceeds $75,000 and there is complete diversity of citizenship. There appears no question that plaintiffs' claims put more than $75,000 in dispute. However, plaintiffs and the defendant pharmacist, Eliza Hughes Smith, are Louisiana citizens. Thus, in order to establish diversity jurisdiction, defendants bear "the heavy burden of proving that non-diverse defendants have been fraudulently joined to defeat diversity." *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995). Defendants can sustain this burden "either by showing that (1) there has been outright fraud in the plaintiff's recitation of jurisdictional facts, or (2) there is no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendants in state court." *Id*.

Defendants have not alleged outright fraud in plaintiffs' statement of the facts, so the second inquiry, regarding the possible existence of a state cause of action, is before the Court. To satisfy the standard for fraudulent joinder, defendants must show that there is no reasonable possibility that plaintiffs will be able to establish a cause of action against Arculeer's pharmacist under Louisiana law. *Id.* The Court has to evaluate all facts in the light most favorable to plaintiffs and resolve all contested issues of controlling substantive law in plaintiffs'

favor. *Id.*

The defendants argue that *respondeat superior* principles preclude recovery against the Louisiana pharmacist as opposed to the foreign employer Target and also that the learned intermediary doctrine precludes recovery against the pharmacist. However, "[u]nder Louisiana law, a plaintiff who is injured by the acts of a corporate officer can sue both the officer individually and the corporation." *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985). Louisiana law imposes a personal (as opposed to vicarious) duty on pharmacists to fulfill certain obligations to their customers. *See Aucoin v. Vicknair*, 1997 WL 539889, *2-3 (E.D. La. 1997). The content of this duty and whether plaintiffs in this case have sufficiently alleged a breach of this duty such that it is reasonably possible to state a claim under Louisiana law are the crucial issues in deciding whether the pharmacist was fraudulently joined.

Paragraph 25 of the complaint contains the central allegation against the pharmacist. The FDA requires that a certain insert warning be included in the packaging for amiodarone. Plaintiffs claim that Arculeer's pharmacist failed to put the insert in the package, which failure was a proximate

cause of Arculeer's injuries.[3]

Pharmacists generally do not have a duty to warn, and are protected by the learned intermediary doctrine, i.e. the prescribing doctor is the one who must warn the patient, not the pharmacist. One often-cited case *Guillory v. Dr. X*, 679 So. 2d 1004, 1010 (La. App. 3d Cir. 1996) describes Louisiana law establishing a pharmacist's duty as follows:

> A pharmacist has a duty to fill a prescription correctly and to warn the patient or to notify the prescribing physician of an excessive dosage or of obvious inadequacies on the face of the prescription which create a substantial risk of harm to the patient. 'The pharmacist does not, however, have a duty to question a judgment made by a physician as to the propriety of a prescription or to warn customers of the hazardous side effects associated with the drug, either orally or by way of the manufacturer's package insert.'"

*Id.* (quoting *Gassen v. E. Jefferson Hosp.*, 628 So. 2d 256 (La. App. 5 Cir. 1993)(quoting *McKee v. Am. Home Prod. Corp.*, 113 Wash. 2d 701, 782 (1989))).

According to this statement of Louisiana law, plaintiff cannot succeed in a claim that the pharmacist failed to include the 'Patient Insert'.

---

[3] Defendant argues that the FDA requirement creates no private cause of action and cannot be used to show *per se* negligence, so no claim is possible. However, plaintiffs are arguing simple negligence, i.e. that the failure to provide the insert breached the standard of care owed by pharmacists to their customers. Thus, defendants' arguments concerning the lack of a federal private right of action are not on point.

However, another case determines that Louisiana applies the "uniform national rule" that a pharmacist has no duty to warn when the prescription is valid on its face and "neither the physician nor the manufacturer has required that the pharmacist give the customer any warning." *Alman v. GlaxoSmithKline Corp.*, 2002 WL 465202 (E.D. La. 2002). In *Alman*, this Court found that because the 'Patient Insert' advised the patient to ask the pharmacist about possible side-effects, and the pharmacist knew that the warning was inadequate, there remained a question as to whether the manufacturer had not in fact required the pharmacist to give further warnings.

Neither of these cases is binding. Both are persuasive. Here, the Court does not have the insert before it and cannot tell whether the manufacturer requires the pharmacist to include it. The Court only knows that the FDA requires the pharmacist to include it. If the insert instructs the patient to ask the pharmacist for further details, or if the manufacturer requires the pharmacist to include the insert, plaintiffs may be able to state a claim under Louisiana law. The fact that the pharmacist did not include an insert that she was required by law to include may indicate a breach of her duties. These are questions of fact and law, to be resolved in plaintiffs' favor at this stage.

9

Several courts have noted "the paucity of jurisprudence" on the issue of pharmacists' duty. There is no Louisiana Supreme Court case on the issue. There is a good chance that plaintiffs' claim against the pharmacist will fail under Louisiana law. However, in the present posture, the Court is not deciding whether plaintiff states a claim under Louisiana law. As the Fifth Circuit has framed the issue:

> Louisiana law on these points is simply not reasonably clear. We may well tend to believe that the probabilities ultimately favor *denying* ... recovery against the [defendant] in these circumstances. That might well be our best *Eerie* guess. But that is not the issue before us in this fraudulent joinder removal case. What we do hold is that there is at least an arguably reasonable basis for predicting that Louisiana would allow ...recovery against the [defendant]."

*Badon v. Nabisco*, 236 F.3d 282 (5th Cir. 2000).

Basically, the Court is faced with a weak claim counterbalanced by a strong presumption. It is a close call. Close calls of fraudulent joinder are resolved in favor of the possible claim. The Court cannot rule out the pharmacist as a proper party. Therefore, complete diversity is lacking.

**CONCLUSION**

Neither basis for federal jurisdiction asserted in the Notice of Removal exists. The manufacturing and marketing of the pharmaceutical company defendants are highly regulated

10

activities. However, extensive regulation alone does not make a federal officer. The claim against Arculeer's pharmacist is doubtful. However, doubt is to be resolved in favor of the existence of the claim at this stage. In addition, federal question jurisdiction has not been properly raised and does not inhere in plaintiffs' state law claims.

Accordingly,

**IT IS ORDERED** that the above-captioned case is **REMANDED** to the 24th Judicial District Court for the Parish of Jefferson.

New Orleans, Louisiana this the 7th day of September, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE